# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-61321-BLOOM/Valle

SCOTTSDALE INSURANCE COMPANY,

      Plaintiff,

v.

KLUB KUTTER'S BAR & LOUNGE, LLC,
and DANIELLE ROLAND,

      Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Scottsdale Insurance Company's ("Plaintiff") Motion for Final Summary Judgment, ECF No. [41] ("Plaintiff's Motion"), and Defendant Klub Kutter's Bar & Lounge, LLC's ("Defendant") Cross-Motion for Summary Judgment, ECF No. [50], ("Defendant's Motion") (collectively, the "Motions"). The Court has carefully reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted and Plaintiff's Motion is denied.

## I.    BACKGROUND

### A.  The Underlying Lawsuit

Danielle Roland ("Roland") filed a lawsuit in the Seventeenth Judicial Circuit in and for Broward County, Florida against Defendant, Case No. CACE16019780 ("the underlying lawsuit"). *See* ECF No. [42-2]. In the underlying lawsuit, Roland alleged that, on or about September 6, 2015, she was a business invitee on Defendant's premises. *Id.* at ¶ 5. On that date, Roland claims she was "trampled by a stampede of patrons located within the Defendant's

nightclub, resulting in severe and permanent injuries." *Id.* at ¶ 6. This "stampede was caused by a fight and subsequent shooting which took place at the Defendant's nightclub." *Id.* at ¶ 7. As a result of this incident, Roland asserted a claim for negligence against Defendant in which she alleged that Defendant "failed to adequately provide security measures to ensure the safety of business invitees while in its club or elsewhere on its premises" and that Defendant's security measures "were not sufficient to provide a reasonably safe condition for its patrons, business invitees or other individuals at the nightclub." *Id.* at ¶¶ 9-10. In addition, Roland alleged that Defendant breached its duty to provide reasonably safe conditions for its patrons and business invitees by (1) failing "to devise, implement and follow a proper security plan, reasonably designed to protect invitees from harm," (2) failing "to properly employ and deploy an adequate number of security personnel to reasonably protect persons on the premises;" and (3) failing "to utilize reasonable and appropriate measures to protect persons on the premises when it knew or should have known of a dangerous condition on the premises." *Id.* at ¶ 14. Plaintiff is currently defending Defendant from the claims raised in the underlying lawsuit under a full reservation of rights. *See* ECF No. [1] at ¶ 18.

**B. The Insurance Policy**

Plaintiff issued an insurance policy to Defendant, Policy No. CPS2312936, which commenced on August 31, 2015 and ended on August 31, 2016 (the "Policy"). *See* ECF No. [42-1]. The Policy, in pertinent part, provides coverage for "bodily injury" and "property damage" if (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" or (2) the "bodily injury" or "property damage" occurs during the policy period. *Id.* at 17. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 31. However,

the Policy also contains certain exclusions, including one for assault and battery ("the Assault and Battery Exclusion"). *Id.* at 54. It provides as follows:

### ASSAULT AND/OR BATTERY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART
LIQUOR LIABILITY COVERAGE PART**

The following exclusion is added to the **Exclusions** section:

This insurance does not apply to "injury," "bodily injury," "property damage," "error or omission" or "personal and advertising injury" arising from:

1.      Assault and/or Battery committed by any insured, any employee/"employee" of any insured, or any other person;

2.      The attempt or failure to suppress or prevent Assault and/or Battery by any person in **1.** above;

3.      The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery.

4.      The negligent;

    a.  Employment;

    b.  Investigation;

    c.  Supervision;

    d.  Reporting to the proper authorities, or failure to so report; or

    e.  Retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **1., 2.** or **3.** above.

*Id.*

### C.  The Declaratory Judgment Action

On July 5, 2017, Plaintiff filed this lawsuit against Defendant and Roland, seeking a declaratory judgment.[1]  *See* ECF No. [1]. Specifically, Plaintiff seeks a declaration that it does not have a duty to defend or indemnify Defendant under the Policy for the claims made by Roland in the underlying lawsuit.  *Id.*  Plaintiff alleges that the Assault and Battery Exclusion removes Roland's claims from coverage under the Policy.  *Id.*  Defendant, in turn, filed a Counterclaim against Plaintiff, seeking a declaration that Plaintiff indeed has a duty to defend and indemnify it for Roland's claims.  *See* ECF No. [6]. According to Defendant, the Assault and Battery Exclusion is inapplicable.  *Id.*  The parties have since filed their respective Motions for Summary Judgment, seeking competing declarations regarding Plaintiff's duty to defend and indemnify under the Policy.  *See* ECF Nos. [41] and [50].  The parties have also filed their respective Responses and Replies.  *See* ECF Nos. [50], [53], and [54].  As such, the Motions are ripe for adjudication.

### II.    LEGAL STANDARD

The competing motions for summary judgment ask the Court to address the same legal issue – whether Plaintiff owes Defendant a duty to defend and indemnify under the Policy.  A district court applies the same legal standards when ruling upon cross-motions for summary judgment as it does when only one party files a motion.  *See Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015).  "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal

---

[1] Roland was served in this case, but she did not respond to the allegations in the Complaint.  *See* ECF No. 36.  As a result, a Clerk's Default was entered against Roland.  *See* ECF No. 35.

theories and material facts." *Id.* (quoting *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 ((N.D. Ga. 2014)).

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence in the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III.    DISCUSSION

As both parties ask the Court to determine, as a matter of law, Plaintiff's obligations under the Policy for Roland's claims against Defendant, the Court addresses the Motions together.

### A.  Interpretation of an Insurance Policy

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). As with all contracts, the interpretation of an insurance contract – including determining whether an insurance provision is ambiguous – is a question of law to be determined by the

court. *Id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

Further, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties."). However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452 at *4 (citing *Purelli v. State Farm Fire & Cas. Co.,* 698 So. 2d 618, 620 (Fla. 2d DCA 1997)).

A coverage clause is generally interpreted as broadly as possible to ensure the greatest amount of insurance coverage. *Id.* at *5 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 5th DCA 1997)). To determine the parties' contractual intent, a court may only consider the language in the insurance policy, unless the policy is ambiguous. *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 854 F.2d 1264, 1267 (11th Cir. 2001) (citing *Towne Realty v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1267 (11th Cir. 1988)). "As a general rule, in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic

evidence." *Id.* (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)). "Although the insured bears the burden of proving that a claim is covered by the insurance policy, the 'burden of proving an exclusion to coverage is . . . on the insurer.'" *Diamond State Ins. Co. v. Boys' Home Assoc., Inc.*, 172 F. Supp. 3d 1326, 1334 (M.D. Fla. 2016) (omissions in original) (quoting *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997)).

### B. Duty to Defend

Plaintiff is currently defending the underlying lawsuit under a full reservation of rights. The threshold issue is whether Plaintiff indeed owes Defendant a defense. "Under Florida law, the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Amerisure Ins. Co. v. Gold Coast Marine Distrib., Inc.*, 771 So. 2d 579, 580-81 (Fla. 4th DCA 2000)). This holds true regardless of whether the allegations are later revealed to be false or even if they seem fraudulent on their face. *Kopelowitz v. Home Ins. Co*., 977 F. Supp. 1179, 1185 (S.D. Fla. 1997) (citing *Smith v. Gen. Accident Ins. Co. of Am.*, 641 So. 2d 123, 123 (Fla. 4th DCA 1994) and *St. Paul Fire & Marine Ins. v. Icard*, 196 So. 2d 219 (Fla. 2d DCA 1967)); *see also Diamond State*, 172 F. Supp. 3d at 1335 ("The actual facts of the situation are not relevant, such that 'the insurer must defend even if facts alleged are actually untrue or legal theories unsound.'") (quoting *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)).

Courts in Florida will typically analyze the duty to defend by comparing the coverage afforded under the policy to the allegations in the underlying complaint. *See Feldman v.*

*Imperium Ins. Co.*, No. 8:14-cv-1637-T-30EAJ, 2015 WL 5854153, at *7 (M.D. Fla. Oct. 5, 2015). Upon a review of the underlying complaint, if the allegations state facts that bring the claim within the policy's coverage, the insurer is required to defend the insured regardless of the claim's merits. *State Farm*, 393 F.3d at 1230. All doubts relating to the duty to defend must be resolved in the insured's favor. *Id.* When the underlying complaint "contains allegations partially within and partially outside the scope of coverage, the insurance carrier is required to defend the entire suit." *Tropical Park, Inc. v. U.S. Fid. & Guaranty Co.,* 357 So. 2d 253, 256 (Fla. 3d DCA 1978); *see also McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Assoc.*, 758 So. 2d 692, 695 (Fla. 4th DCA 2000) ("[A]n insurer must defend a lawsuit against its insured if the underlying complaint, when fairly read, alleges facts which create potential coverage under the policy.").

Thus, under this standard, the Court must apply the facts alleged in the underlying complaint to determine whether they fall within the scope of the Assault and Battery Exclusion. In support of its position, Plaintiff relies on the following portions of the exclusion:

> This insurance does not apply to "injury," "bodily injury," "property damage," "error or omission" or "personal and advertising injury" arising from:
>
> 1. Assault and/or Battery committed by any insured, any employee/"employee" of any insured, or any other person;
>
> 2. The attempt or failure to suppress or prevent Assault and/or Battery by any person in **1.** above;
>
> . . .
>
> 3. The negligent;
>
>     a. Employment;
>
>     b. Investigation;
>
>     c. Supervision;

    d.   Reporting to the proper authorities, or failure to so report; or

    e.   Retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **1.**, **2.** or **3.** above.

*See* ECF No. [41] at 5.

The underlying complaint, in turn, alleges that, Roland was "trampled by a stampede of patrons located within the Defendant's nightclub, resulting in severe and permanent injuries." *See* ECF No. [42-2] at ¶ 6. This "stampede was caused by a fight and subsequent shooting which took place at the Defendant's nightclub." *Id.* at ¶ 7. Importantly, these are the only facts alleged about the occurrence.

To support a denial of coverage, Plaintiff focuses on the phrase "arising out of" contained within the exclusion along with four cases interpreting Florida law and concluding that an assault-and-battery exclusion applied. Defendant, on the other hand, argues that the exclusion cannot apply because Roland does not allege she was injured as a result of an assault or battery, an attempted assault or battery or, as a result of negligent employment, investigation, supervision, reporting to the proper authorities, or failure to report to the authorities. *See* ECF No. [50] at 7. Starting with Plaintiff's arguments, Plaintiff is correct in pointing out that the Florida Supreme Court has defined the phrase "arising out of" in insurance policy language more broadly than the phrase "caused by." *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539–40 (Fla. 2005). In fact, "arising out of" has been defined as "'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Id.* (quoting *Hagen v. Aetna Cas. & Sur. Co.,* 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). The phrase "arising out of" "requires more than a mere coincidence between the conduct . . . and

the injury. It requires 'some causal connection, or relationship'" but does not require proximate cause. *Id.* (citing *Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 657 So. 2d 925, 927 (Fla. 1st DCA 1995) and *Race v. Nationwide Mut. Fire Ins. Co.,* 542 So. 2d 347, 348 (Fla. 1989)). However, when applying the sparse facts alleged in Roland's underlying complaint to the Assault and Battery Exclusion in the Policy, the Court's analysis does not end at the "arising out of" language. Rather, the Court must look to the remainder of the exclusionary language to determine whether a duty to defend exists.

To further support its position, Plaintiff cites to four cases interpreting Florida law. None of those cases are analogous. Three of the cases involved an undisputed assault or battery to the claimant in the underlying lawsuit. *See Whilshire Ins. Co. v. Poinciano Grocer, Inc.,* 151 So. 3d 55, 56 (M.D. Fla. 2014)("Martin alleged he was legally on Poinciana's property collecting trash through his employment with Florida Commercial Care when he was 'attacked and brutally stabbed' by Henderson as he left a convenience store after purchasing a large amount of alcoholic beverages"); *Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So. 2d 402, 403 (Fla. 3d DCA 1998)("Perrine Foods was sued by one Henry Suarez for personal injuries he allegedly sustained at the hands of unknown and third parties during the course of a robbery"); *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So. 2d 965, 965 (Fla. 5th DCA 1991) ("Appellee concedes that the patron was injured by an assault and battery . . ."). Although the fourth case upon which Plaintiff relies would appear to be analogous, the policy at issue contained critical exclusionary language not found in the Assault and Battery Exclusion here. *See Miami Beach Enter., Inc. v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161 (Fla. 3d DCA 1996). In *Miami Beach Enter.*, the underlying complaint alleged that the plaintiff was at a nightclub when a fight broke out involving numerous individuals, which led to the plaintiff being

struck in the head with a champagne bottle. *Id.* at 162. The appellate court concluded that the allegations in the complaint triggered the assault-and-battery exclusion. *Id.* Importantly, the policy excluded coverage for assault, battery, or "*harmful or offensive contact between two or more persons*." *Id.* (emphasis added). Thus, it contained language that "was specifically tailored to preclude claims of negligence for premises liability – the very claims that [the plaintiff] asserted in his complaint." *Id.* In contrast, the Assault and Battery Exclusion in this case contains no such language tailored to preclude a premises liability claim, such as the one Roland alleges in the underlying lawsuit.

The Court notes that Defendant has failed to cite to any case law supporting its position. Nonetheless, in reaching the correct decision, the Court has determined that there exists a line of cases interpreting analogous assault-and-battery exclusions involving similar facts. Starting with the recent opinion of *AIX Specialty Ins. Co. v. Sombreros, LLC*, the plaintiffs therein alleged that gun shots were fired inside a night club, causing panic and running within the premises. *See AIX Specialty Ins. Co. v. Sombreros, LLC*, No. 8:7-cv-843-T-26TBM, 2018 WL 1635643, at *1 (M.D. Fla. April 5, 2018). Some of the plaintiffs alleged that they were "knocked down and trampled by other patrons, business invitees and/or guests of The Hall" while one other plaintiff alleged he was shot as he attempted to leave the premises. *Id.* The assault-and-battery exclusion, in part, excluded from coverage any bodily injury "(1) arising in whole or in part out of any 'assault' or 'battery' committed or attempted by any person; or (2) "arising in whole or in part out of any attempt by any person to avoid, prevent, suppress or halt any actual or threatened 'assault' or 'battery.'" *Id.* at *3. Although the policy did not define the terms "assault" or "battery," the court relied upon Florida law to supply the definition. *Id.* Specifically, a battery occurs when someone "1. [a]ctually and intentionally touches or strikes another person against

the will of the other; or 2. [i]ntentionally causes bodily harm to another person.'" *Id.* at *4 (quoting Fla. Stat. § 784.03(1)(a)). As to criminal assault, it is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which created a well-founded fear in such other person that such violence is imminent." *Id.* (quoting Fla. Stat. § 784.011). Relying upon the reasoning of other similar Eleventh Circuit and Southern District of Florida cases, which are further discussed below, the *AIX Specialty* court pointed out that both assault and battery require intent. *Id.* at *6. However, the underlying complaint did not contain any allegation that the shooter intended to shoot someone. *Id.* By failing to allege the required element of intent, the underlying complaint did not allege an assault and battery and did not, therefore, fall within the scope of the exclusion. *Id.*

The Eleventh Circuit reached a similar conclusion in a case alleging that other patrons of a nightclub fired their guns in the parking lot and one of those bullets hit a patron in the chest, causing his death. *See Colony Ins. Co. v. Barnes*, 198 F. App'x 941, 942 (11th Cir. 2006). Similar to the Policy in this case, the policy in *Barnes* contained an assault-and-battery exclusion for lawsuits arising out of or resulting from "(1) [a]ssault and [b]attery committed by any person; (2) [t]he failure to suppress or prevent assault and battery by any person; . . . (4) [t]he negligent hiring, supervision, or training of any person." *Id.* Finding that the underlying complaint did not allege whether the shooter intended to create a well-founded fear of imminent peril or that the shooter intended to hit the plaintiff, the Eleventh Circuit concluded that the assault-and-battery exclusion could not apply. *Id.* at 943. In addition, the circuit court rejected any argument that the shooter's intent could be transferred from another victim to the deceased plaintiff because the underlying complaint contained no allegations of intent. *Id.* at 943, n.2. *See also Burlington Ins.*

*Co. v. Coa-Dal Security Agency, Inc.*, No. 07-22647-CIV-ALTONAGA/Brown, 2008 WL 11333513, *4 (S.D. Fla. July 30, 2008) ("Similar to the complaint in *Barnes*, Fernandez's amended complaint does not allege the armed robber intended to shoot him or make him apprehensive that violence was imminent.").

Based on this line of cases, the Court concludes that the Assault and Battery Exclusion within the Policy does not apply here to preclude a duty to defend. The underlying complaint contains a mere two allegations regarding the injury-causing event. Roland simply alleges she was "trampled by a stampede of patrons located within the Defendant's nightclub, resulting in severe and permanent injuries" and the "stampede was caused by a fight and subsequent shooting which took place at the Defendant's nightclub." *See* ECF No. [42-2] at ¶ 6-7. Nowhere in this bare-bones complaint does Roland allege the intent of these unknown individuals. Because all doubts relating to the duty to defend must be resolved in the insured's favor, the Court declines to read allegations into the underlying complaint that are not otherwise pled. *State Farm*, 393 F.3d at 1230. Stated differently, the Court will not simply assume that the individuals at the nightclub intended to create a well-founded fear of imminent peril or intended to touch, strike or cause bodily harm. Absent such allegations, Roland's claims cannot be deemed to arise out of an assault or battery or the attempt or failure to suppress or prevent an assault or battery. And for that reason, the Court finds that Plaintiff has a duty to defend Defendant from Roland's claims in the underlying lawsuit.

## C. Duty to Indemnify

Both parties also ask the Court to enter summary judgment in their respective favor on the duty to indemnify. "An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the

underlying case." *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2010) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998) and *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). "The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims by some other means." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citing *Travelers Ins. Co. v. Waltham Indus. Lab. Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989)). If the insured can show that it did not suffer a covered loss, then there is no duty to indemnify. *Id.* "Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Id.* (citing *Bankwest v. Fid. & Deposit Co. of Md.*, 63 F.3d 974, 981-82 (10th Cir. 1995)).

At this point, it would be premature for the Court to decide the question of indemnity. Not only have the parties not presented the Court with any evidence beyond the insurance policy and the underlying complaint, but also there is no indication that the underlying case has resulted in a final judgment, settlement, or final resolution through some either means. For that reason, the Court cannot determine whether the Assault and Battery Exclusion applies to exclude Roland's claim from indemnity coverage under the Policy.

IV.     **CONCLUSION**

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment, **ECF No. [41]**, is **DENIED**;

2. Defendant's Motion for Summary Judgment, **ECF No. [50]**, is **GRANTED in part**;

3. The Court finds that Plaintiff, Scottsdale Insurance Company, has a duty to provide Defendant, Klub Kutter's Bar & Lounge, LLC, a defense for the claims asserted in *Danielle Roland v. Klub Kutter's Bar & Lounge, LLC*, Case No. CACE16019780 pending in the Seventeenth Judicial Circuit in and for Broward County, Florida.

4. This case is **STAYED** until the underlying proceedings have resulted in a final judgment, settlement, or other final resolution. The parties are directed to file a motion to reopen this case at such time to obtain a ruling on the duty to indemnify under the Policy.

5. All pending motions are **DENIED** as moot. All pending deadlines and hearings are **VACATED**.

6. The Clerk is directed to **ADMINISTRATIVELY CLOSE** this case;

**DONE AND ORDERED** in Miami, Florida this 24th day of April, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record